George Robert FOSTER, Appellant,

v.

The STATE of Texas, State.

No. 2–92–408–CR.

Court of Appeals of Texas,
Fort Worth.

April 6, 1994.

Earl R. Waddell, III, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section; David M. Curl, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before LATTIMORE, DAY and FARRAR, JJ.

OPINION

LATTIMORE, Justice.

Appellant, George Robert Foster, was convicted by a jury of the offense of aggravated

possession of a controlled substance, namely methamphetamine of more than 28 grams, but less than 400 grams, including adulterants and dilutants, with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.116, 481.102(6) (Vernon 1992). The jury assessed punishment at thirteen years in the Institutional Division of the Texas Department of Criminal Justice, and a fine of $100.00. On appeal Foster raises two points of error contending that: (1) the evidence is not sufficient to prove that appellant possessed more than twenty-eight grams of methamphetamine, including adulterants and dilutants; and (2) the trial court erred by overruling Foster's motion to suppress all the physical evidence because the search warrant failed to show probable cause and the warrant is defective under article 18.04 of the Texas Code of Criminal Procedure.

We affirm.

On August 14, 1991, officers assigned to the Tarrant County Narcotics Task Force executed a search warrant at 519 Claire Court in Arlington. Inside the residence, officers seized several glassine bags containing a powdery substance, several syringes, a bowl, scales, two notebooks, and letters addressed to Foster. The officers arrested the two people present at the residence, Foster and a female companion. At trial, the State's laboratory technician identified the chemical content of the powdery substance in each of two bags, State's exhibits 19 and 24. Both bags contained one percent methamphetamine, for a combined weight of 0.6866 grams. In addition, State's exhibit 24 contained seventy-five percent, and State's exhibit 19 contained eighty percent nicotinamide, a recognized dilutant of methamphetamine. The total weight of the nicotinamide was 52.5365 grams. The remaining nineteen percent of State's exhibit 19, and twenty-four percent of State's exhibit 24, totaling 15.4369 grams, was not identified. The total weight of the substance in the two bags was 68.6600 grams. Foster was charged with possession of more than 28 grams of methamphetamine including dilutants, based on the 53.2231 gram aggregate weight of the methamphetamine and nicotinamide.

In Foster's first point of error, he complains that the evidence is insufficient to prove that he possessed more than 28 grams of methamphetamine including any adulterants and dilutants. In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim. App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App. 1983) (opinion on reh'g), *overruled on other grounds,* 820 S.W.2d 154 (Tex.Crim.App. 1991). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Urbano v. State,* 837 S.W.2d 114, 115 (Tex.Crim. App.1992); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Urbano,* 837 S.W.2d at 115–16; *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

Foster's challenge on the sufficiency of the evidence is based on his interpretation of *Cawthon v. State,* 849 S.W.2d 346 (Tex. Crim.App.1992) (opinion on reh'g). In *Cawthon,* the State's expert analyzed a seized quantity of drugs weighing 128.76 grams total. The expert testified that twenty percent (25.752 grams) of the substance was amphetamine, with the rest being adulterants and dilutants. However, when cross-examined by defense counsel, the expert admitted that he had not determined the identity of the adulterants and dilutants. *Id.* at 347. Caw-

thon was charged only with the aggravated offense, based on the weight of the illegal substance plus adulterants and dilutants exceeding 28 grams in weight. The court of criminal appeals directed an acquittal, and held:

> [W]hen adulterants and dilutants constitute a part of the weight utilized to increase punishment, the State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance, (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product, (4) the weight of the illegal substance, including any adulterants and/or dilutants.

*Id.* at 348–49.

Foster argues that the charged offense of possession of methamphetamine over 28 grams in weight, including adulterants and dilutants, requires the State to prove that *none* of the adulterants and/or dilutants added to the illegal substance to increase its bulk or quantity have affected the chemical activity of the named illegal substance. The State argues that it must only prove that the *part* of the adulterants and/or dilutants necessary to bring the total weight of the seized drug to over 28 grams have not affected the chemical activity of the illegal substance. In the State's view, there is no burden to show the identity and chemical inactivity of any of the adulterants and/or dilutants in the seized drugs once the 28 gram threshold has been satisfied.

There are practical problems with both of these views. Foster's interpretation would require the State to identify and quantify *all* (*i.e.*, 100%) of the substances present in the drug sample, to classify each of the substances as a adulterant/dilutant, and to verify that those substances do not affect the chemical activity of the named illegal substance. In many cases, this burden may be impossible to meet. If the State fails to identify one percent of the seized drug, is it to be precluded from seeking an increase in punishment? For example, suppose that the seized drug contains 27 grams of illegal substance, 100 grams of identified adulterant/dilutant known not to affect chemical activity of the illegal substance, and 1 gram of an unknown substance. In Foster's view, this offense could only be prosecuted as possession of less than 28 grams. We do not think that this is the result the *Cawthon* court desired.

On the other hand, the State's interpretation, while practical from a chemist's and prosecutor's perspective, potentially allows conviction on an aggravated offense where the actual quantity of illegal substance is minute. The facts of this case are a good example. Here there was only 1% of illegal substance, 76.5% of identified adulterant/dilutant known not to affect the chemical activity of the illegal substance, and 22.5% of unknown substances. Thus, the unknown substances exceeded the quantity of illegal substance by a factor of over 22 to 1. The expert testified that this was a very weak sample, compared to the average diluted methamphetamine seized by the police. There was no evidence presented by the State to prove that the unknown substance would not affect the chemical activity of the illegal substance. The language of *Cawthon* and *McGlothlin v. State*, 749 S.W.2d 856, 860 (Tex.Crim.App.1988), appears to anticipate that some substances could make the illegal substance ineffective for its intended use, and precludes an increased sentence where chemical activity may have been affected. The State's interpretation, under some fact situations, would ignore this aspect of the *Cawthon* and *McGlothlin* holdings.

Having been forced to pick between these two interpretations, we believe the interpretation of *Cawthon* urged by the State to be the more workable approach. The State did present uncontradicted evidence that (1) the illegal substance was methamphetamine, (2) the added dilutant nicotinamide did not affect the chemical activity of the methamphetamine, (3) the nicotinamide was added to increase the bulk or quantity of the final product, and (4) the weight of the methamphetamine and nicotinamide exceeded 28 grams. Unlike in *Cawthon*, the expert here did analyze and identify enough of the added

dilutant to exceed the 28 gram threshold for aggravating the offense. *See Short v. State* [1], 874 S.W.2d 666 (Tex.Crim.App.1994) (motion for reh'g pending). Further, after reviewing the record, we find that defense counsel did not question the expert about the possible chemical activity of the unknown substance in the sample, or otherwise question the conclusion that the methamphetamine and nicotinamide exceeded 28 grams in weight. Viewing the evidence in the light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Point of error one is overruled.

 In his second point of error, Foster complains that:

> THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS ALL THE PHYSICAL EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION; ARTICLE ONE, SECTION NINE OF THE TEXAS CONSTITUTION; AND ARTICLES 1.06, 18.01, 18.04, AND 38.23 OF THE TEXAS CODE OF CRIMINAL PROCEDURE FOR THE FOLLOWING REASONS: (A) THE AFFIDAVIT SUPPORTING THE SEARCH WARRANT FAILED TO SHOW PROBABLE CAUSE, AND (B) THE WARRANT IS DEFECTIVE UNDER ARTICLE 18.04.

At trial, Foster's motion to suppress evidence only stated that he was arrested and detained without probable cause, in violation of his "4th, 6th, and 14th amendment constitutional rights; article I, sect. 9 Texas Constitutional Rights, and Code Crim.Proc. (Texas) Article 1.06 and Chapters 14 and 15," without giving any specific basis for those assertions. At the suppression hearing, defense counsel argued that the affidavit establishing probable cause was defective because the confidential informant used by the police was not shown to be reliable. On appeal, Foster argues other grounds why the affidavit and warrant were defective, but these are waived, because the complaint on appeal must comport with the trial objection to be preserved for review. *See Johnson v. State,* 803 S.W.2d 272, 292–93 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled in part on other grounds,* 815 S.W.2d 681 (Tex.Crim. App.1991). Furthermore, Foster's point of error is multifarious, and should be held waived. *See Black v. State,* 816 S.W.2d 350, 358 n. 11 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992); *Minor v. State,* 659 S.W.2d 161, 164 (Tex.App.–Fort Worth 1983, no pet.). In the alternative, Foster has not shown he had a privacy interest in the house searched, and thus had standing to challenge the search. *See United States v. Salvucci,* 448 U.S. 83, 95, 100 S.Ct. 2547, 2554–555, 65 L.Ed.2d 619, 630 (1980); *Manry v. State,* 621 S.W.2d 619, 621 (Tex.Crim.App. [Panel Op.] 1981). At trial, Foster moved for an instructed verdict on the basis that the house searched was not his residence. Point of error two is waived.

The judgment of the trial court is affirmed.

---

1. In *Short,* the defendant was charged with manufacture of a controlled substance, namely methamphetamine of more than 400 grams. The State's expert testified that the seized methamphetamine, including any of its adulterants and/or dilutants, weighed 1093.7 grams. Defense counsel neither cross-examined the State expert concerning the analysis of the adulterants or dilutants, nor presented any expert testimony to rebut the State evidence. On appeal, Short asserted that the evidence was insufficient to support a conviction, because there was no proof of the identity and chemical activity of the adul-

terants and/or dilutants. The court of appeals reversed the conviction, based on *Cawthon. Short v. State,* 857 S.W.2d 620 (Tex.App.—Corpus Christi 1993). The court of criminal appeals, in reversing the court of appeals, distinguished *Cawthon,* holding that the evidence concerning the quantity of the drug and its classification as an adulterant and/or dilutant was uncontroverted, unlike *Cawthon, Reeves v. State,* 806 S.W.2d 540 (Tex.Crim.App.1990) (opinion on reh'g), *Engelking v. State,* 750 S.W.2d 213 (Tex. Crim.App.1988), and *McGlothlin v. State,* 749 S.W.2d 856 (Tex.Crim.App.1988). *Short,* 874 S.W.2d at 668.