In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00093-CR
_____

JAMARLON JERMAINE GLENN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR27839

**MEMORANDUM OPINION**

Jamarlon Jermaine Glenn appeals from the trial court's decision to revoke its order placing Glenn on community supervision. In issue one, Glenn challenges the sufficiency of an affidavit used to obtain a search warrant, which was then used to obtain evidence demonstrating that Glenn had engaged in criminal activity in violation of the terms governing his probation. In issue two, Glenn argues the State failed to meet its burden of proving, by a preponderance of the evidence, that he violated the conditions of his probation. We affirm the trial court's judgment.

1

Background

In 2010, Glenn pled guilty to an indictment charging him with possession of a controlled substance. Subsequently, the trial court assessed a five-year sentence, suspended Glenn's sentence, and placed Glenn on community supervision for a period ending in December 2015. The order placing Glenn on community supervision prohibited Glenn from possessing a firearm and required that Glenn not commit any additional crimes while on community supervision.[1] In September 2014, the State filed a motion to revoke Glenn's community supervision, alleging that in

---

[1] The community supervision order required Glenn to "submit his [] person, place of residence, and vehicle to search and seizure at any time with or without a search warrant, whenever requested to do so by any law enforcement officer or Liberty/Chambers County Supervision and Corrections Department, for the purpose of monitoring whether the defendant is complying with the terms and conditions of community supervision." The testimony from the hearing conducted on the State's motion to suppress does not indicate that before showing Glenn that the police had a warrant that they asked if Glenn would consent to having his residence searched. At trial, and in the brief that it filed in the appeal, the State did not argue that Glenn had a diminished expectation of privacy in his residence because he was on probation when the police searched his residence, or argue that the officers were entitled to enter Glenn's residence based upon a standard lower than probable cause. *See generally U.S. v. Knights*, 534 U.S. 112, 121 (2001) (under the Fourth Amendment, no more than reasonable suspicion is required to search a probationer's house). Because we have concluded that the affidavit used to support the warrant was sufficient to support a finding of probable cause, we need not decide whether a standard less than probable cause applies under the totality of circumstances the trial court was asked to consider when it ruled on Glenn's motion to suppress.

August 2014, Glenn committed three crimes and that he was in possession of a firearm while on community supervision.

Prior to the hearing the trial court conducted on the State's motion to revoke, Glenn filed a motion to suppress the evidence the State intended to use to support the allegations that he had violated the terms of the trial court's community supervision order. When the trial court conducted a hearing on the motion to suppress, Glenn argued the search warrant was invalid because the affidavit used to support the warrant did not establish probable cause to justify the magistrate's decision to issue the warrant, and that the affidavit did not describe with sufficient specificity the locations to be searched. The trial court denied Glenn's motion to suppress.

Affidavit Supporting the Search Warrant

We apply a highly deferential standard in reviewing a magistrate's decision to issue a search warrant. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). A magistrate issues a search warrant when the affidavit used to support the warrant demonstrates, based on "the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In reviewing whether the affidavit provided the magistrate with sufficient information to authorize

the warrant, we focus entirely on the information that is found in the four corners of the affidavit. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). "The inquiry for reviewing courts, including the trial court, is whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location." *Rodriguez*, 232 S.W.3d at 62.

The affidavit that Glenn challenges was executed by a licensed peace officer assigned to a Drug Enforcement Administration task force stationed in Houston. The affidavit states that the object to be searched was "one of several structures located at 1541 F.M. 2830, Raywood, Liberty County Texas." The affidavit describes the object to be searched as a residence "constructed of an off white painted wood with maroon trimming and a red composition shingle roof." According to the affidavit, the structure to be searched was controlled by three individuals, which included Jamarlon Glenn. The affidavit described Glenn's residence, and stated that the peace officer expected to find controlled substances in Glenn's residence if it were searched, including methamphetamine, together with various types of records that would show that Glenn violated Chapter 481 of the Texas Health and Safety Code (Texas Controlled Substances Act).

4

The facts within the affidavit include the peace officer's statement that he was contacted by a confidential source approximately two months earlier, and explains that the confidential source "has used methamphetamine in the past and knows it by sight and smell." The affidavit describes how Glenn and other individuals, whose names are specifically identified, were involved in drug trafficking activities in Harris and Liberty Counties. The affidavit includes the peace officer's statement that the confidential source informed the peace officer previously, on multiple occasions, he had purchased methamphetamine from an individual who was involved in distributing drugs for Glenn.

We conclude that the affidavit contains facts that address the reliability of the confidential source. The affidavit states that from the information provided by the confidential informant, the peace officer determined that the individuals named by the confidential informant as being involved in Glenn's operation had previously been arrested on drug-related charges. The peace officer's affidavit indicates that he learned that one of the individuals identified by the confidential source other than Glenn was currently wanted for drug-related charges in connection with having violated the conditions of his parole. The affidavit describes that another of the individuals named by the confidential source, but not Glenn, was currently wanted

based on allegations for violating his parole by delivering cocaine and engaging in organized crime.

We further conclude that the peace officer's affidavit contains facts explaining why the peace officer believed that evidence of a crime would be found inside Glenn's residence. The affidavit states that an undercover buy near Glenn's residence had occurred within the past twenty-four hours. According to the affidavit, an undercover officer purchased approximately 115 grams of methamphetamine from a distributor near Glenn's residence. The affidavit indicates that while under surveillance by someone who watched the undercover drug buy, the distributor was then seen walking toward Glenn's residence after having agreed to sell the undercover officer drugs, and seen meeting with Glenn at the back door of Glenn's residence. The peace officer's affidavit then states: "Surveillance observed JAMARLON GLENN deliver a white cup to [the distributor]."[2] The peace officer's

---

[2] According to Glenn, he was subsequently indicted for committing the offenses the State used as the basis of its motion to revoke his community supervision order. In his brief, Glenn states that in October 2016, after Glenn perfected his appeal in this case, the trial court conducted a *Franks* hearing in connection with a motion to suppress in four criminal cases that involved charges relating to the evidence police obtained in the same search that is at issue in this appeal. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). According to Glenn, in the October 2016 *Franks* hearing that the trial court conducted in the cases the State filed against him charging him with committing crimes involving the drug transaction that involved the undercover officer, the trial court found that one of the sentences in the peace officer's affidavit was made with reckless disregard for the

6

affidavit also indicates that the distributor returned with the white cup and gave it to the undercover officer who paid for the drugs, and that the substance in the cup the distributor gave to the undercover officer in the transaction was methamphetamine, which weighed 115 grams.

We further conclude the affidavit provided the magistrate with circumstances that support the magistrate's conclusion that a search of Glenn's residence would

---

truth. According to Glenn, in evaluating the validity of the search warrant in the cases in which the State charged him with crimes, the trial court excised a sentence from the peace-officer's affidavit that states: "Surveillance observed JAMARLON GLENN deliver a white cup to [the distributor]." *See id.* at 156 ("In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."). The brief Glenn filed in this appeal mentions that the trial court, after redacting the above quoted sentence, denied the motion to suppress that he filed in the criminal cases that were filed against him following the same search that is at issue in this appeal. Therefore, in Glenn's criminal cases filed after the same search that is at issue in this appeal, it appears the trial court found the remaining information in the peace officer's affidavit sufficient to support the magistrate's decision to issue the warrant. Glenn concedes in this appeal, which concerns the revocation of his probation based on a completely separate criminal case, that the various facts about what happened in the criminal cases filed against him following the same search that is at issue in this appeal are not part of the record that is before us in this appeal. Consequently, we cannot consider Glenn's claims about what occurred in his other criminal cases because they are facts that are outside our record, and our ruling is based on the evidence before the trial court when it ruled on the motion to suppress that Glenn filed in the trial court that resulted in this appeal. *See Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984).

probably reveal evidence of a crime. The peace officer explained in the affidavit that in his experience, it was common for individuals involved in drug trafficking activities to have records of those activities in their residences, including the telephone numbers of suppliers and customers, records of the cash transactions involved in the transactions, documents reflecting the interstate travel required to obtain and distribute illegal substances, as well as firearms and other dangerous weapons. The affidavit included information the magistrate used to allow police to search not only Glenn's residence, but also the vehicles and outbuildings on the grounds that were around it.

Challenge to Reliability of Confidential Source

Before reaching the merits of Glenn's arguments challenging the reliability of the confidential source, we address whether the argument Glenn presents in his appeal comports with the arguments that he presented to the trial court. In Glenn's motion to suppress, he argued that the affidavit supporting the search warrant failed to provide the magistrate with sufficiently specific information about the locations that the magistrate allowed the police to search. For instance, in the suppression hearing, Glenn argued that the person who observed the transaction with the undercover officer could not have had a clear line of sight to his residence, and he argued that the magistrate should have issued separate warrants for each building to

8

be searched because the buildings that were described in the affidavit are assigned separate street addresses. In contrast, the argument that Glenn makes in his brief is that the confidential source was not shown to be someone who was reliable or trustworthy based on the information in the four corners of the affidavit. He did not present this argument to the trial court in arguing that the warrant should be suppressed.

We conclude that the argument Glenn makes in his appeal about the reliability of the confidential source does not comport with the argument he presented to the trial court. Consequently, Glenn waived his right to challenge the reliability of the confidential source because he presented his argument on that ground for the first time in his appeal. *See* Tex. R. App. P. 33.1; *see also Foster v. State*, 874 S.W.2d 286, 289 (Tex. App.—Fort Worth 1994, pet. ref'd) (a challenge to a search warrant affidavit is waived if the reasons why the affidavit is defective varies from the arguments made in the suppression hearing).

Glenn's argument would not have succeeded even had he first presented the argument he advances to the trial court. Under Texas law, "[t]he circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant." *State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). When police surveillance corroborates

a tip from an anonymous or first-time confidential source, the corroborated portion makes the uncorroborated portions more likely. *Angulo v. State*, 727 S.W.2d 276, 279 (Tex. Crim. App. 1987). In this case, the search warrant affidavit establishes that the police corroborated the confidential source's tip by conducting a controlled buy on property that Glenn controlled.

Omitted Facts

In issue one, Glenn suggests that important information about the controlled buy was omitted from the affidavit used to support the warrant. Glenn argues that without these details, the affidavit lacked the particularity that is needed to establish a reasonable probability that a search would lead to evidence of a crime.

Our review, however, does not focus on "whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit." *Rodriguez*, 232 S.W.3d at 62. In this case, the affidavit supporting the search warrant states that within the last twenty-four hours, the undercover officer and a distributor involved with Glenn were outside of Glenn's residence, the undercover officer gave the distributor $2900, the distributor was seen walking from the undercover officer's vehicle towards Glenn's residence, seen meeting with Glenn by the back door to his residence, and that the distributor

10

returned to the undercover officer's vehicle and gave him a white cup later determined by police to contain 115 grams of methamphetamine. In this case, the information police obtained during the undercover operation described by the peace officer's affidavit tends to corroborate the confidential source's information that Glenn had involvement in both the undercover buy and in drug trafficking operations that involved the use of his residence.

In our opinion, the magistrate did not err in issuing the search warrant given the inferences that are capable of being reasonably drawn from the peace officer's affidavit. We must defer to the magistrate's conclusions when the magistrate's inferences from the information found in the four corners of the affidavit the magistrate relied on to issue the warrant were reasonable. *Gates*, 462 U.S. at 238-39. When reviewing the magistrate's decision to issue a search warrant, our duty is simply to ensure that the information in the affidavit the magistrate reviewed offers a substantial basis to support the magistrate's conclusion that a search of a location described in the affidavit would probably uncover evidence of a crime. *Id*. Considering all of the information in the peace officer's affidavit and the inferences available from it, we agree with the trial court's conclusion that the magistrate was authorized to find that a search of Glenn's residence and the structures surrounding it would probably lead to the discovery of evidence of a crime. Having concluded

11

that the trial court did not abuse its discretion by denying Glenn's motion to suppress, we overrule issue one.

Violation of Community Supervision Order

In his second issue, Glenn contends the State failed to meet its burden of proving, by a preponderance of the evidence, that he had violated the terms and conditions of the trial court's community supervision order. In his brief, Glenn argues for the first time on appeal that the evidence would not preponderate in the State's favor had the trial court re-opened the hearing to allow him to offer a videotape that he obtained after the hearing. Glenn also assumes, based on his incorrect assumption that he would prevail on issue one, that in a future hearing the State would not be able to present any of the evidence obtained when police searched his residence. However, Glenn concedes that the videotape referenced in his brief was not offered or admitted in the hearing that is the subject of this appeal. Moreover, even had we allowed Glenn to supplement the record with the videotape, we could not have considered it because it was not before the trial court when it made the ruling that he is challenging in this appeal. *Farris v. State*, 712 S.W.2d 512, 515 (Tex. Crim. App. 1986).

We review decisions of trial court's revoking community supervision orders for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App.

12

2006). The State's motion to revoke alleges that Glenn violated the terms of the trial court's community supervision order in four ways, and one of them was that he was found in possession of a firearm while on community supervision. After the trial court heard evidence in the hearing on the motion to revoke, the trial court found that the greater weight of the credible evidence reasonably supported the State's claims on each of the four grounds the State had alleged when it filed its motion to revoke. *See id.* at 764.

The record shows that when the trial court placed Glenn on community supervision, it ordered Glenn not to use, carry, or possess a firearm. During the hearing, a police officer testified that police recovered a firearm in the kitchen cabinet of Glenn's residence during their search. In his brief, Glenn has not argued that the State failed to prove by a preponderance of the evidence that police recovered a firearm in his kitchen, or that the firearm found there was not in his possession.

We hold the trial court did not abuse its discretion by finding that Glenn, while on community supervision, possessed a firearm in violation of the conditions imposed on him when he was placed on community supervision. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) (holding that one ground offers a sufficient basis to support the trial court's decision revoking community

13

supervision). We overrule issue two. Having overruled both of Glenn's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on July 5, 2017
Opinion Delivered September 27, 2017
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

14